UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BRUCE F. MURRY,

                                         Petitioner,

       vs.

                                                   9:06-CV-322

GARY GREENE,                              (GTS/GJD)
Superintendent of Great Meadow Correctional Facility
                                       Respondent.

_____

BRUCE F. MURRY, Petitioner *Pro Se*
ALYSON J. GILL, Assistant Attorney General for Respondent

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Local Rules N.D.N.Y. 72.3(c).

      Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, challenging a judgment of conviction rendered in the Onondaga County

Court.  On July 23, 2003, after a jury trial, petitioner was found guilty of second

degree burglary and petit larceny.  On August 20, 2003, petitioner was sentenced to a

determinate term of ten years on the burglary conviction, with a one year concurrent

sentence for the petit larceny conviction.

      Prior to trial, petitioner filed an Article 78 petition, challenging the indictment.

The petition was "dismissed without a hearing" because an Article 78 proceeding

was not the proper vehicle to address petitioner's claims. *People v. Murry*, Decision and Order, Onondaga County Supreme Court (Brunetti, J.), May 15, 2003. Prior to sentencing, petitioner made two motions in the County Court. One motion was to vacate the judgment pursuant to N.Y. CRIM. PROC. LAW Section 440.10, and the other motion was to set aside the verdict pursuant to N.Y. CRIM. PROC. LAW § 330.30.

Onondaga County Court Judge Joseph Fahey denied the motions from the bench before imposing sentence. Sentencing Transcript (ST) at 2. Petitioner filed his direct appeal in June 2005, and the Appellate Division affirmed the conviction on December 22, 2005. *People v. Murry*, 24 A.D.3d 1319, 805 N.Y.S.2d 911 (4th Dep't 2005). Petitioner's appellate counsel filed an application for leave to appeal to the New York Court of Appeals, and petitioner filed a *pro se* application for the same relief. The New York Court of Appeals denied leave to appeal on February 7, 2006. *People v. Murry*, 6 N.Y.3d 815, 845 N.E.2d 1286 (2006).

Petitioner raises two grounds for relief in the petition itself.

1.  The conviction was obtained in violation of due process because petitioner was denied his rights under N.Y. CRIM. PROC. LAW Section 190.50. (Petition, ¶ 12 (A)).

2.  Petitioner's rights under the 5th, 6th, and 14th Amendments of the federal constitution, and the New York State Constitution were violated because the court and the prosecutor failed to instruct the jury regarding the elements of Second Degree Burglary. (Petition, ¶ 12 (B)).

Respondent has filed an answer (Dkt. No. 10), a memorandum of law (Dkt. No. 9),

and the pertinent state court records.[1]  In respondent's papers, he specifically addressed the two claims that petitioner raised in the petition.  The court notes, however, that petitioner has filed a traverse, a memorandum of law, and two "supplemental" traverses. (Dkt. Nos. 12, 14, 18, 19).  In these documents, petitioner appears to be raising two additional claims, one challenging the sufficiency of the evidence, and the second, challenging the effectiveness of petitioner's counsel.  The court notes, however, that each of the additional claims relates in some way to the original grounds for relief,[2] thus, the court has considered petitioner's additional arguments.

     For the following reasons, this court will recommend that the petition be denied and dismissed.

## DISCUSSION

1.   <u>Facts</u>

     On January 16, 2003, Sonya Hodges saw an individual carry a television out of her neighbors' home at 116 Kirk Avenue in Syracuse, New York.  (Trial Transcript

---

[1]The state court records are listed on pages 2 and 3 of respondent's Answer.  (Dkt. No. 10).

[2] Because the petitioner is *pro se*, the court considers all possible grounds that petitioner could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)(court will interpret *pro se* papers to raise the strongest arguments they suggest).  The court will not, however, prejudice petitioner with its interpretation.  The claim that petitioner's counsel was ineffective relates to the Grand Jury issue because petitioner claims that his rights under New York law to testify before the Grand Jury were violated due to the ineffective assistance of court-appointed counsel.  The claim regarding insufficient evidence relates to petitioner's challenge to the court's and the prosecutor's statements regarding the elements of Second Degree Burglary.

("T.") 244).  The Donovan family lived at 116 Kirk Avenue, and Ms. Hodges lived

directly across the street. (T. 244, 245).  Ms. Hodges knew that the Donovans were

not home because she was babysitting for them at her home when she noticed the

individual leaving with the television. (T. 244).

 Ms. Hodges testified that she opened her window, called out to the individual,

and asked him what he was doing and why he was taking the television.  (T. 245).

When the individual failed to answer her,  Ms. Hodges "yelled down to him that

[she] was calling the cops." *Id*.  As she was calling "911," Ms. Hodges kept an eye

on the perpetrator to see what he was doing. (T. 245).  Ms. Hodges stated that the

individual was struggling with the television as he came down the front porch steps,

and when he got to the bottom of the stairs, he put the television on the ground and

began dragging the television by its cord around to the back of the Donovan's house.

(T. 247).

 Ms. Hodges called the police, told them what the individual was wearing and

which way he was headed. (T. 247).  She sent her son outside to see "which way [the

individual] was headed." *Id*.  Ms. Hodges then hung up the telephone and followed

her son outside. *Id*.  Ms. Hodges saw the individual again at the corner of Landon

Street and Kirk Avenue before losing sight of him again. (T. 248).  The individual no

longer had the television with him when Ms. Hodges saw him crossing Landon

Street. (T. 248).  When the police arrived, Ms. Hodges directed the police to the

place where she last saw the individual.  *Id*.  Very shortly after that, the police asked

Ms. Hodges to accompany them to view a suspect. (T. 264).  Ms. Hodges identified

petitioner as the individual who she saw leaving the Donovan's home with the

television.  (T. 246, 265).

Several Syracuse police officers responded to Ms. Hodges's call, including

Officers Quick, Skardinski, Burdick, Gilbertsen, and Bresett.  After meeting Ms.

Hodges on the corner of Landon and Kirk Avenue, Officer Quick used a police dog

to track footsteps in the snow behind 106 Landon Avenue. (T. 269).  The footprints

led to a police cruiser, where Captain Rathbun had already detained an individual

who matched the description given by the police dispatcher. (T. 269).

Officer Quick then backtracked, following the same footprints back to Landon

Avenue, and found the television in the driveway of 117 Landon Avenue.  (T. 271).

Officer Gilbertsen  looked around the outside of the Donovan home.  (T. 312).

Officer Gilbertsen followed a trail of footprints and drag marks out of the backyard

of 116 Kirk Avenue to a point between two homes on Landon Avenue.  (T. 313-14).

At the end of the trail, Officer Gilbertsen found a large screen television that

appeared to have been dragged to that location. (T. 315).

Officer Burdick worked as an evidence technician on January 16, 2003.  (T.

292).  Officer Burdick took pictures of the television, and arranged for the television

to be transported to the police station.  (T. 293-94).  Officer Burdick also took

5

pictures around the property at 116 Kirk Avenue, including a front-facing porch

window that the officers determined to be the point of entry into the home.  (T. 298).

Officer Burdick saw that the screen had been cut, and that there were "marks on the

window . . . where someone put their hands on the window to slide the window up."

*Id*.  Officer Burdick also took pictures of the front door to 116 Kirk Avenue, but

stated that there did not appear to be any new[3] damage to the door, door frame, door

knob, or lock.  (T. 299-300).

Officers Skardinski and Bresett saw Captain Rathbun stop petitioner. (T. 278).

The officers then stopped to assist Captain Rathbun, who had petitioner in custody

on West Kennedy Street. (T. 278).  Officer Skardinski testified that he searched

petitioner and found "a couple" of television remote controls. (T. 279).  Officer

Skardinski asked petitioner where he had been and where he was going. (T. 281).

Petitioner told Officer Skardinski that petitioner had come from an address over on

Kirk Avenue. *Id*.  Petitioner told Officer Skardinski "that a guy approached him over

on McKinley Ave. and said that he'd pay him $20 to go get some belongings out of a

residence on Kirk Ave." (T. 283).

Officer Bresett interviewed petitioner at the Criminal Investigation Division.

(T. 341).  During that interview, petitioner stated that someone asked petitioner "to

do a job for him." (T. 345).  Petitioner told Officer Bresett that petitioner found the

---

[3] It was Officer Burdick's opinion that there did appear to be some "old" damage to the
door. (T. 299, 301).

house, and that the door was unlocked. *Id.*  Petitioner stated that "he went inside, grabbed the television, took it outside, [and] put it between a couple of houses on Landon." *Id.*  Petitioner told Officer Bresett that he specifically took the remote controls to show this individual that he had taken the television, and that he was owed the twenty dollars that had been promised.  *Id*.

At the conclusion of the interview, petitioner signed a statement that reflected these facts, and he was arrested.  (T. 347-48).  Petitioner did not dispute that he was the individual carrying the television out of the residence at 116 Kirk Avenue, rather, he claimed that someone told him to enter the house and take the television.  The jury convicted petitioner of Second Degree Burglary and Petit Larceny

Respondent argues[4] that both of petitioner's original claims in this habeas proceeding were not exhausted, and are procedurally barred.  Petitioner argues that both claims are exhausted.  The court also will address the arguments that petitioner makes in his subsequent submissions to the court.

## 2.   **Standard of Review**

### A.  Exhaustion

The law is well-settled that prior to bringing a petition for habeas corpus

---

[4] Respondent's counsel has actually addressed one of the two additional claims, purportedly raised by petitioner in supplemental papers.  In footnote four of the respondent's brief, he states that although petitioner does not "appear" to be claiming that his attorney was ineffective, respondent addresses the merits of such a claim.  Although respondent does not specifically address the sufficiency of evidence issue, the issue is related to petitioner's "jury instruction" claim, and no additional argument is necessary from respondent.

pursuant to 28 U.S.C. § 2254, a petitioner must exhaust his state court remedies with respect to each claim presented in his federal application for habeas relief. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The petitioner must "fairly present" his claims in each appropriate state court, alerting the court to the ***federal nature*** of the claim. *Willette v. Fischer*, 508 F.3d 117, 121 (2d Cir. 2008)(citations omitted). In *Willette*, the Second Circuit stated that it has required at least the "substance" of the federal claim to be fairly presented. *Id.*

As the Second Circuit has held, in order for a petitioner to "invoke 'one complete round of the State's established appellate review process'", he must first appeal his or her conviction to the Appellate Division, and then must seek further review of the conviction by applying for leave to appeal to the New York Court of Appeals. *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005)(quoting *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005)). Applicants for leave to appeal must submit briefs and other documents to the Court of Appeals, identifying the issues upon which the application is based, and must focus upon identifying problems of reviewability and preservation of error. *Id.*

### B. Procedural Default

If petitioner has not exhausted his state court remedies, but no longer has remedies available in state court with regard to these claims, they are "deemed" exhausted but are also procedurally defaulted. *Bossett v. Walker*, 41 F.3d 825, 828

(2d Cir. 1994) (citing *Grey*, 933 F.2d at 120-21), *cert. denied*, 514 U.S. 1054 (1995).

A state prisoner who has procedurally defaulted on a federal claim in state court is

entitled to federal habeas review of that claim *only* if he can show both cause for the

default and actual prejudice resulting from the alleged violation of federal law, or

establish that failure of the court to consider the claim will result in a miscarriage of

justice. *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991).

When petitioner is not able to show cause for the procedural default, the court

need not decide the issue of prejudice, because in order to qualify for habeas review

under this exception, petitioner must demonstrate *both* cause and prejudice. *Long v.

Lord*, 03-CV-461, 2006 U.S. Dist. LEXIS 50439, *17-18 (N.D.N.Y. March 21, 2006)

(citing *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985)). A miscarriage of justice

occurs if the constitutional violation has "probably resulted in the conviction of one

who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

**C. Merits**

If the petitioner has exhausted his state court remedies and is *not* procedurally

barred from bring his federal claim, then the court may consider the merits of the

petitioner's argument. Under the Antiterrorism and Effective Death Penalty Act

("AEDPA"), claims adjudicated *on the merits* in state court will stand

> unless the adjudication . . . (1) resulted in a decision that was contrary
> to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States;
> or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State

court proceeding.

28 U.S.C. 2254(d)(2007).  If the state court has not adjudicated the claim on the

merits, the habeas court must apply the pre-AEDPA standards, and will conduct a *de*

*novo* review of the state court disposition of the petitioner's federal constitutional

claims. *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v.*

*Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

   In order to apply the deferential AEDPA standard, the court must first

determine whether the federal claim has been considered "on the merits" by the state

court.  "[A] state court adjudicates a petitioner's federal constitutional claims on the

merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition

to judgment."  *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002)(internal citations

omitted).  In order to determine whether a state court has disposed of a claim on the

merits, the following factors are considered: "(1) what the state courts have done in

similar cases; (2) whether the history of the case suggests that the state court was

aware of any ground for not adjudicating the case on the merits; and (3) whether the

state court's opinion suggests reliance upon procedural grounds rather than a

determination on the merits." *Aparicio*, 269 F.3d at 93 (quoting *Sellan v. Kuhlman*,

261 F.3d 303, 314 (2d Cir. 2001)).

   A state decision is "contrary to clearly established Federal law if it 'contradicts

the governing law' or 'if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the Supreme Court." *Ramirez v. Miller*, 2005 U.S. Dist. LEXIS 4306, *10 (S.D.N.Y. March 11, 2005)(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The "contrary to" standard requires an *unreasonable* application of the law, not simply an "incorrect" application. *Id*. "Objective unreasonableness includes an unreasonable refusal 'to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." *Id*. (quoting *Kennaugh v. Miller*, 289 F.3d 36, 45 & n.2 (2d Cir. 2002)).

Pursuant to 28 U.S.C. § 2254(e)(1), the state court's determination of a factual issue is presumed to be correct. The petitioner has burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. 2254(e)(1) (2007). *See Sorto v. Herbert*, 364 F. Supp. 2d 240, 248-49 (E.D.N.Y. 2004). The Supreme Court held that "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## 3.   <u>Grand Jury</u>

Petitioner's first claim is that his "due process" rights were violated because he was not given the opportunity under New York Law to testify before the grand jury.

(Petition, ¶ 12 (A)).  Respondent argues that the claim is unexhausted, procedurally barred, and in any event, does not present a federal question for this court's review. This court need not consider the exhaustion or procedural default arguments because petitioner's grand jury claim is simply not cognizable in a federal habeas corpus action.

In conducting habeas review, a federal court is limited to determining whether the petitioner's rights have been violated under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle*, 502 U.S. at 68.  Errors of state law do not entitle a petitioner to federal habeas relief. *Id.*  Thus, before applying the AEDPA standard, the court must first determine whether the claim is cognizable in an application for federal habeas corpus.

It is well settled that "there is no federal constitutional right to a grand jury in a state criminal proceeding." *Mirrer v. Smyley*, 703 F. Supp. 10, 12 (S.D.N.Y.), *aff'd*, 876 F.2d 890 (2d Cir. 1989), *cert. denied*, 493 U.S. 850 (1989).  *See also Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990).  "Federal courts have consistently held that the right to appear before the grand jury is not reviewable by a federal habeas court." *Dunn v. Sears*, 561 F. Supp. 2d 444, 453-54 (S.D.N.Y. 2008)(citing *Dixon v. McGinnis*, 492 F. Supp. 2d 343, 347

12

(S.D.N.Y. 2007); *Moore v. Warden*, 380 F. Supp. 2d 321, 328 (S.D.N.Y. 2005)). *See also Peterson v. New York*, 06 Civ. 3369, 2009 U.S. Dist. LEXIS 30334, *6 (S.D.N.Y. April 7, 2009)(citations omitted).

A petitioner must assert an independent federal constitutional claim in order for any alleged defects in grand jury proceedings to be reviewed in a habeas corpus petition. *Pacheco v. Giambruno*, 9:01-CV-318, 2004 U.S. Dist. LEXIS 29311, at *30 (N.D.N.Y. May 6, 2004)(citing *Lopez v. Riley*, 865 F.2d 30, 32-33 (2d Cir. 1989); *Barnes v. Giambruno*, No. 01 Civ. 8965, 2002 U.S. Dist. LEXIS 7969 at *24-26 (S.D.N.Y. May 2, 2002)).  *See also, Wainwright v. Goode*, 464 U.S. 78, 86 (1983).

In this case, although petitioner uses the words  "due process," it is clear that the basis for petitioner's claim is the ***New York*** Criminal Procedure Law, specifically Section 190.50. *Id*.  The statute governs who has a right to appear in front of a New York grand jury, and who may call a witness to appear. N.Y. CRIM. PROC. LAW § 190.50.  Petitioner's "right" to testify is based solely upon New York law.  Because there is no federal constitutional right to testify before the grand jury, petitioner's claim must fail.

## 4.   <u>Ineffective Assistance of Counsel</u>

A review of the supplemental papers submitted by petitioner show that he may be attempting to make a claim that he was denied the effective assistance of counsel

in conjunction with his grand jury claim.[5]  Petitioner does not mention ineffective

assistance of counsel in the actual petition.  However, in his Memorandum of Law,

petitioner states that his rights under N.Y. CRIM. PROC. LAW § 190.50 were violated

"due to the ***ineffective assistance of court-appointed counsel*** . . . ." (Dkt. No. 14 at

1-2 (emphasis added)).

In his Second Supplemental Traverse, petitioner makes several references to

his counsel: "Your Honor, can you understand the controversity [sic] and lies

comitted [sic] here by my court-appointed Attorney?"; a reference to an instance

when his attorney "contradicted her testimony given on February 6, 2003"; and a

reference to his attorney who "didn't see that he receive [sic] his C.P.L. § 190.50

right, was also a violation of the 6th amendment and petitioner received an unfair trial

because the evidence was very insufficient to indict." (Dkt. No. 19 at 4, 14, and 15).

A claim that petitioner received ineffective assistance of counsel would be based on

the Sixth and Fourteenth Amendments and could be independent of the purely state

law grand jury claim.

Petitioner sprinkles the allegation that his counsel was ineffective all through

his state court papers.  In his *pro se* motion to vacate his judgment, petitioner claimed

_____

[5]Although respondent states in a footnote that it does not "appear" that petitioner is raising the ineffective counsel claim, respondent's counsel did not have the benefit of the petitioner's supplemental papers, which do seem to be attempting to raise the ineffective assistance claim.  As this court has stated above, however, respondent's counsel did address the ineffectiveness claim in his footnote.  Thus, no additional briefing is necessary.

that his right to testify before the grand jury was violated due to the ineffective assistance of trial counsel. Petitioner's Post-Verdict Motion to Vacate at 5-6 (reprinted in Petitioner's Appendix on Appeal at A82-83).  This motion to vacate was filed prior to sentencing, and the County Court Judge denied the motion from the bench. (ST. at 2).  Although, petitioner's appellate counsel included a copy of the petitioner's *pro se* motion to vacate in counsel's Appendix on appeal to the Appellate Division, counsel did ***not*** include either the grand jury claim or the related ineffective assistance of counsel claim in his memorandum of law in support of petitioner's direct appeal.[6]  The Appellate Division did not consider either claim in its decision. *People v. Murry*, 24 A.D.3d at 1319-20, 805 N.Y.S.2d at 911-912.

Petitioner filed a *pro se* application for leave to appeal to the New York Court of Appeals.  Petitioner's counsel filed a separate application raising the same three claims that he raised on direct appeal: sufficiency of the evidence; suggestive identification; and prosecutorial misconduct.  Attached to the *pro se* application, petitioner included all of the papers that he submitted in the courts below, including a

---

[6] Petitioner made two *pro se* motions during the pendency of his direct appeal to the Appellate Division, however, one was simply to expedite the appeal and the other was for release pending appeal.  These motions were also attached to his *pro se* application for leave to appeal to the New York Court of Appeals. (Pro Se Application dated January 16, 2006).  Neither motion was sufficient to raise a separate issue in the Appellate Division.  A petitioner must use the correct procedural vehicle to effectively raise a claim in the state court. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985).  When the petitioner employs an improper state procedure in presenting his claims, the federal court cannot conclude that the state court was given a "fair opportunity" to consider the petitioner's constitutional claim. *Id.*  It is clear that the Appellate Division did not consider either a grand jury claim or an ineffective assistance of counsel claim.

document entitled "Omnibus Motion" in which petitioner complained about his trial

attorney in relation to the grand jury claim.

However, in petitioner's introductory document to the *pro se* application for

leave to appeal, he mentioned **only** the grand jury claim, and the prosecutorial

misconduct claim, ***without any reference to ineffective assistance of counsel***.

Simply attaching all prior papers that might include additional claims, while arguing

other claims specifically in the application, is not sufficient to raise an issue before

either the Appellate Division or the New York Court of Appeals.[7] *See Jordan v.*

*LeFevre*, 206 F.3d 196, 198-99 (2d Cir. 2000)(state court does not have the duty to

comb through applicant's prior briefs to find arguments that are not expressly raised

in the application).  It does not appear that this petitioner has given the state court a

real opportunity to decide an ineffective assistance of counsel claim.  It thus appears

that any claim of ineffective assistance of counsel is not exhausted, if he is

attempting to raise such a claim in this petition.

Even though petitioner's claim appears to be unexhausted, petitioner may not

return to state court because this issue is clearly one that he should have raised

properly at some level of his direct appeal.  He cannot now return to file another

---

[7] This is distinguishable from cases in which the letter to the Court of Appeals simply asks for leave to appeal, without specifying any claims, and then attaches the briefs filed in the Appellate Division.  In such a case, the Second Circuit has held that the letter suffices to raise all the claims that were raised below. *See Galdamez v. Keane*, 394 F.3d 68, 74-78 (2d Cir.), *cert. denied*, 544 U.S. 1025 (2005).

motion to vacate his conviction raising this issue because under N.Y. CRIM. PROC. LAW § 440.10(2)(c), the court will not consider issues in a motion to vacate that should have been raised on direct appeal, but were unjustifiably omitted from the direct appeal. *See also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)(citations omitted).  Under New York law, petitioner has one chance to apply for leave to appeal to the New York Court of Appeals. *Id.*  He has had that chance, and may not now return to state court.

Thus, petitioner has not only failed to exhaust this claim, but has procedurally defaulted.  Petitioner in this case has not addressed any issue of default,[8] even though respondent argues that petitioner's grand jury claim is unexhausted and is procedurally barred from review in this court.  Rather, petitioner argues that his grand jury/counsel claim was exhausted because he raised it many times in state court.

It is clear, however, that he did not raise the ineffective assistance of counsel claim properly.  Since petitioner has not established cause for his procedural default concerning this claim, this court need not decide whether he suffered prejudice. *Lord*, *supra*.  As stated above, absent cause and prejudice, the court may also excuse

---

[8] The court understands that a reason for petitioner's failure to acknowledge the default is that he does not really raise the issue of ineffective counsel in his petition.  The court is exercising liberality in attempting to determine, based on petitioner's multiple submissions, the claim that he is trying to raise.  The court has acted in an abundance of caution in making this interpretation, and finds that even if the petitioner were trying to raise this claim, it would not be able to succeed.

a procedural default if petitioner can show that the failure to review his claims would result in a fundamental miscarriage of justice in that petitioner was "actually innocent." *Sawyer v. Whitely*, 505 U.S. 333, 339 (1992). *See also Murray*, 477 U.S. at 496.

To invoke this exception, the petitioner must show "factual innocence," not mere "legal insufficiency," and must present ***new and reliable evidence*** to show that it is "more likely than not" that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Moore v. Greiner*, 02 Civ. 6122, 2005 U.S. Dist. LEXIS 24184, *35-37 (S.D.N.Y. 2005) (citations omitted).  In this case, petitioner has presented no new or reliable evidence.  Petitioner argues that despite the fact that he removed the television from the residence, no crime occurred.  Although as discussed below, petitioner appears to argue that he did not commit second degree burglary, petitioner is simply confused regarding the elements of the crime.

The court finds that petitioner has not shown cause and prejudice for his failure to properly bring the ineffective assistance of counsel claim in the state courts.  Additionally, the failure to review this claim will not result in a fundamental miscarriage of justice.  This court finds that the ineffective assistance of counsel claim may be "deemed" exhausted, but finds that consideration of this claim is procedurally barred.[9]

---

[9] The court must also point out that any claim of ineffective assistance of counsel regarding petitioner's failure to testify before the grand jury is totally meritless.  In order for

**5.    Jury "Instructions"/Insufficient Evidence**

The second claim listed in the petition is that petitioner was denied his rights

under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Petitioner states that the "D.A. and the court refused to instruct the jury on the

elements of 140.25 pursuant to the penal law, Burglary 2nd.  The prosecutor did not

state the elements of 140.25(2) to the jury in his opening and closing statements."

(Petition ¶ 12(B)).

While petitioner's initial presentation of these issues in his federal petition

uses the words "jury instructions," it appears from reading the entirety of petitioner's

submissions that petitioner is essentially challenging the sufficiency of the evidence

based upon his perception of the elements of second degree burglary.  Petitioner also

seems to be somehow alleging prosecutorial misconduct relating to the prosecutor's

opening and closing statements to the jury.

Respondent argues that these claims are also unexhausted, procedurally

barred, and are without merit.  However, respondent's counsel did not have the

---

counsel to be found ineffective, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Both federal and state courts have held that an attorney's failure to effectuate the defendant's right to appear before the grand jury does not establish ineffective assistance of counsel. *See Kohler v. Kelly*, 890 F. Supp. 207, 213 (W.D.N.Y. 1994), *aff'd*, 58 F.3d 58 (2d Cir. 2005); *People v. Sturgis*, 199 A.D.2d 549, 550, 606 N.Y.S.2d 241, 243 (2d Dep't 1993). Petitioner maintains that if he could have testified before the grand jury, he could have explained the facts of the case and refuted the finding that he committed a crime.  However, any error in grand jury proceedings is cured by the subsequent conviction on the charge by the petit jury. *Velez v. New York*, 941 F. Supp. 300, 316 (E.D.N.Y. 1996).  Thus, petitioner's claim would have been dismissed in any event.

benefit of the petitioner's supplemental submissions when counsel submitted the

memorandum of law.  This court will attempt to sort out petitioner's true claims and

address them.

On direct appeal, petitioner's counsel raised a claim that the evidence was

legally insufficient to convict petitioner and that the conviction was against "the

weight of the evidence." Petitioner's Appellate Brief at 18-22.  Counsel also argued

that the prosecutor's opening statement was "insufficient" and that his comments on

summation were improper.  *Id.* at 29-35.[10]  Finally, counsel argued that the

identification procedure used by the police was improper.[11]

The Appellate Division clearly considered the weight and sufficiency of the

evidence claims ***on the merits***. *People v. Murry*, 24 A.D.3d at 1319, 805 N.Y.S.2d at

911.  The Appellate Division also considered petitioner's claim of prosecutorial

misconduct during the opening and closing statements on the merits. *Id.* 24 A.D.2d at

1320, 805 N.Y.S.2d at 912.  The Appellate Division then stated that petitioner had

"failed to preserve for . . . review his further contention that the prosecutor's opening

---

[10] The court notes, as does petitioner, that respondent has omitted pages 33-34 of petitioner's counsel's brief to the Appellate Division.  Although it is unknown what those pages contain, the court has examined the prosecutor's brief and the Appellate Division decision make the determination that appellate counsel argued those two issues with respect to the prosecutor's conduct. *See* People's Brief at 12-13; *People v. Murry*, 24 A.D.2d at 1320, 805 N.Y.S.2d at 912. By reading the prosecutor's arguments, the court understands what petitioner is now attempting to raise by stating that the prosecutor did not properly "instruct" the jury on the elements of the crime. People's Brief at 13.

[11] Petitioner does not raise this claim in any papers.

statement was legally insufficient . . . and, in any event, defendant's contention is without merit." *Id.*  Counsel included all three issues in his application for leave to appeal to the New York Court of Appeals.

Based on the Appellate Division's decision, it is apparent that petitioner had two claims regarding the prosecutor's conduct.  The first claim, decided on the merits, was related to the prosecutor's disparaging comments during his opening and closing statements regarding the petitioner's "story."  Petitioner claimed that the prosecutor improperly characterized petitioner's explanation for entering the Donovans' home as "ridiculous" and "almost insulting." (T. 239 (opening); 380 (closing)).  Petitioner's counsel objected to both of the prosecutor's comments. *Id.*

The second claim is that the prosecutor's opening was "legally insufficient" because the prosecutor failed to specify the elements of the crime and how the prosecution was going to prove them.  Although petitioner's counsel did not object at the time of the opening statement, she objected after the first witness testified for the prosecution. (T. 258-61).  In fact, counsel moved for a mistrial based on the prosecutor's alleged error. (T. 258).  The trial court denied the legal insufficiency motion, and in addition, Judge Fahey stated that his curative instructions regarding the prosecutor's disparaging comments were sufficient to outweigh any potential prejudice. (T. 260).

**A. Legal Insufficiency of Opening Statement**

Aside from a *clear* statement of procedural default regarding the "legal sufficiency" of the prosecutor's opening statement,[12] this court finds that this claim is not cognizable in a federal habeas corpus application.

Petitioner essentially states that the judge should have directed a verdict for petitioner at the end of the prosecutor's opening because the prosecutor did not properly state all the elements of the crime that he needed to prove.  The New York Court of Appeals has held that the trial court may direct acquittal based on the prosecutor's opening statement, but this should only be done if there is an affirmative showing that the prosecutor is not entitled to a conviction because the charge cannot be sustained under any view of the evidence, and then, only after the prosecutor has been given the opportunity to correct any error. *See People v. Kurtz*, 51 N.Y. 380, 385, 434 N.Y.S.2d 200, 203, 414 N.E.2d 699, 702 (1980).  The Supreme Court discussed this principle in a *civil* action in *Best v. District of Columbia*, 291 U.S. 411, 415 (1934).

These decisions do not treat the issue as one of constitutional dimension.  In

---

[12] Although the Appellate Division stated that petitioner "failed to preserve for our review his further contention that the prosecutor's opening statement was legally insufficient," citing New York's contemporaneous objection rule, N.Y. CRIM. PROC. LAW § 470.05(2).  It is unclear why the court made that finding since counsel did object (albeit late), and the court discussed the issue thoroughly. (T. 258-60). In any event, the Appellate Division also found in the alternative that the claim had no merit.  Since this court finds that the claim is not cognizable, there is no need to resolve the procedural default issue.

fact, it has been held that as long as the evidence that is presented to the jury adequately supports the conviction, the defendant is not entitled to a dismissal of the action on this basis. *See United States v. Greenburg*, 268 F.2d 120, 123 (2d Cir. 1959).  Thus, the important issue for constitutional due process purposes is whether there was sufficient evidence to convict the petitioner, not whether the prosecutor failed to state what he or she was going to prove at the beginning of the case.  Thus, petitioner's claim in this case that the prosecutor did not properly "instruct" the jury on the elements of the crime is not cognizable.

### B.  Jury Instructions from the Court

The real issue for petitioner in this case is that he believes that the evidence was insufficient to convict him of second degree burglary because ***he believes*** that in order to be convicted of second degree burglary, the prosecution would have to prove that he "broke" into the Donovans' home by "force."  Interestingly, in his direct appeal, appellate counsel raised a sufficiency claim, but argued that there was insufficient proof that petitioner "intended" to commit a crime in the home since petitioner's explanation all along was that he was asked by an unknown individual to get the television out of the house.[13]  In his federal petition, he now focuses upon the prosecutor's alleged failure to outline the proper elements in his opening, and on the

---

[13] As stated above, counsel's argument on appeal was decided on the merits by the Appellate Division.

judge's alleged failure to "properly" charge the jury on second degree burglary.[14]

In his Memorandum of Law to this court, petitioner describes the elements of

Second Degree Burglary as

> (a) It's a dwelling in which people reside.  They sleep and eat in it.  (b) The effect of entry must be by force.  Something must be broken or destroyed to gain entry.  (c) Someone must be threaten by some means whether verbally or phisically [sic] with the showings of a weapon to harm them.

(Dkt. No. 14, 5).  Petitioner is ***incorrect.***  N.Y. PENAL LAW Section 140.25 states that

> A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in ***a building*** with intent to commit a crime therein, ***and*** when
>
>> 1.  In effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
>>> (a) Is armed with explosives or a deadly weapon; or
>>> (b) Causes physical injury to any person who is not a participant in the crime; or
>>> (c) Uses or threatens the immediate use of a dangerous instrument; or
>>> (d) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; ***or***
>>
>> **2.  The building is a dwelling**.

N.Y. PENAL LAW § 140.25 (emphasis added).

---

[14] Trial counsel understandably did not object to the judge's charge, and a jury charge claim was not raised in state court, rendering such a claim unexhausted.  Additionally, because no objection was interposed at trial, there is no chance that petitioner could return to state court to raise this claim, and therefore, the claim, to the extent that it challenges the trial court's instructions to the jury would also be barred by procedural default.  This court has chosen to consider the merits in the alternative because the "jury instruction" claim is related to a claim of insufficient evidence.  The insufficiency claim was exhausted, albeit with another factual allegation, and petitioner's misapprehension is so basic that court believes it is appropriate to explain the issue.

The court notes the use of the word "or" at the end of Section 140.25(1)(d) indicates that only one of the two conditions; either 140.25(1) or 140.25(2) need be met.  The relevant element in *this* case is that the building be a dwelling.  If the building is a dwelling, *no force need be used to enter*.  The trial judge instructed the jury that the elements of second degree burglary are "knowingly enter[ing] or remain[ing] unlawfully in a building with the intent to commit a crime *and when the building is a dwelling*."  (T. 395)(emphasis added).  The first section, with its requirements of weapons, injuries, or threats, simply did *not* apply in this case, and the judge did not read that portion of the statute in his jury charge.  There is no question in this case that the building was a dwelling.  The factual basis for petitioner's claim is *completely* unfounded, and the County Court judge's instruction was completely correct.

The adequacy of a state court's jury instructions is generally a matter of state law.  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  In *Estelle*, the Supreme Court held that the "only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. at 147).  The Second Circuit has held that a "constitutional violation occurs only if 'there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof

insufficient to meet the *Winship*[15] standard." *Justice v. Hoke*, 45 F.3d 33, 34 (2d Cir. 1995) (citing *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)).

In this case, the trial court specifically instructed the jury that it was the prosecution's burden to prove beyond reasonable doubt every element of the charged crime. (T. 402-03). Petitioner seems to be claiming that the judge failed to read all the elements of the crime, thus allowing petitioner to be convicted upon evidence that did not prove all the elements beyond a reasonable doubt. As stated above, petitioner misunderstands the elements of second degree burglary, and it is clear that he could be convicted of second degree burglary without having used "force" to enter the house and without displaying any weapons. Thus, regardless of any exhaustion or procedural default issues, petitioner's claim is completely meritless.

## 6.   <u>Insufficient Evidence</u>

Though petitioner does not state that he makes a claim of insufficient evidence in the Petition, petitioner argues in his various submissions to this court that there was insufficient evidence to convict him of second degree burglary. (Dkt. No. 12[16],

---

[15]*In re Winship* is the Supreme Court case that requires that each element of the charged offense be proven *beyond a reasonable doubt*. *In re Winship*, 397 U.S. 358 (1970).

[16]Petitioner quotes his counsel's argument on direct appeal that there was insufficient evidence to convict, and that conviction was ***against the weight of the evidence***. It does not appear to the court that petitioner is attempting to raise a claim in this proceeding that his conviction goes against the weight of the evidence. The court notes, however, that under New York State law, a "weight of the evidence" claim and a "legal sufficiency" claim are related, but have distinctly different standards. *See People v. Bleakley*, 69 N.Y.2d 490, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). A claim that the verdict is against the "weight of the evidence" is a purely state law claim, based upon N.Y. CRIM. PROC. LAW § 470.15, whereas a legal sufficiency

6; Dkt. No. 14, 2-3; Dkt. No. 18, 5; Dkt. No. 19, 9).  Petitioner argued that the verdict was based on insufficient evidence in his direct appeal to the Appellate Division and the Court of Appeals.  Even though petitioner's counsel focused upon the "intent" element of the crime, the Appellate Division found that "the conviction is supported by legally sufficient evidence."  *People v. Murry*, 24 A.D. 3d at 1319. Counsel's  argument in the state courts was that petitioner did not "knowingly enter[] the house with the ***intent*** to commit a crime." (Appellant's Brief, 21 (emphasis added)).  Because the court found that the conviction was supported by "legally sufficient evidence," this court finds that petitioner's claim was decided "on the merits."[17]

In his "Traverse," petitioner states that "[t]here was no proof beyond a reasonable doubt that petitioner entered the residence by force or that he threaten [sic] or harmed anyone as stated in Mckinley's [sic] Penal Law § 140.25(2) . . ." (Dkt. No. 12, 6).  In his *Memorandum of Law*, petitioner argues that the "prosecutor

---

claim is based upon federal constitutional principles. *See Garbez v. Greiner*, 01 Civ. 9865, 2002 U.S. Dist. LEXIS 13806, *24-25 (S.D.N.Y. July 30, 2002)(citing *People v. Bleakley*, 69 N.Y.2d 490, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987)).  To the extent that petitioner's quotation of his counsel's argument could be construed as an attempt to make a claim in this proceeding that the verdict was against the weight of the evidence, the claim may be dismissed as a purely state law claim.

[17] The court points out that even if counsel did not raise petitioner's version of the sufficiency claim, in order for the Appellate Division to find that the conviction was supported by legally sufficient evidence, the court would necessarily have to find the evidence was sufficient for a jury to find petitioner guilty of all the elements of Second Degree Burglary beyond a reasonable doubt.

could not prove I the Appellant entered residence [sic] by force . . ." (Dkt. No. 14,

3).  In his first supplemental traverse, petitioner states that the "D.A. could not prove

that I broke into that residence by force . . ." (Dkt. No. 18, 5).  Petitioner is

attempting to make the same argument that supports his jury instruction claim, using

the same misapprehension of the law.

A habeas petitioner challenging the sufficiency of the evidence bears "a very

heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation

marks omitted); *Einaugler v. Supreme Court of New York*, 109 F.3d 836, 840 (2d Cir.

1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the

evidence "does not require a court to 'ask itself whether it believes that the evidence

at the trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443

U.S. 307, 318-19 (1979) (quoting *Woodby v. I.N.S.*, 385 U.S. 276, 282 (1966)).

Rather, the well-established Supreme Court precedent holds that "the relevant

question is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19.

At trial, petitioner did not dispute that he removed the television from the

residence.  (T. 241).  Sonya Hodges testified that she saw petitioner remove the

television from the residence.  (T. 245, 246, 265).  Several police officers testified

that they responded to Ms. Hodges's emergency call, and found the television and

petitioner.  The jury also heard testimony about petitioner's belief that he had permission from an unidentified individual to retrieve the television, and that petitioner had signed a statement to police to that effect.  (T. 345).  The jury simply did not believe the petitioner's version of the story.

Based on the evidence at trial, a reasonable jury could have found petitioner guilty beyond a reasonable doubt.  Accordingly, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of second degree burglary and petit larceny.  The Appellate Division did not apply Supreme Court precedent unreasonably or make a decision contrary to Supreme Court precedent.

As stated above, petitioner's arguments in this court make a different claim about the sufficiency of the evidence than the claim he made in state court.  While petitioner's argument in state court focused on intent, petitioner's arguments here focus on other elements of second degree burglary, specifically whether petitioner threatened anyone during the course of the crime, or whether petitioner used force to enter the residence on Kirk Avenue.

The basis for petitioner's current claim is that the prosecution did not prove all of the elements of Second Degree Burglary.  Specifically, petitioner argues that there was no evidence that he entered the residence by force or that he threatened anyone during the course of the crime.  (Dkt. No. 12, 6; Dkt. No. 14, 2-3; Dkt. No. 18, 5;

Dkt. No. 19, 9).  However, as explained above, petitioner is incorrect about what elements comprise Second Degree Burglary under N.Y. Penal Law § 140.25.  The elements of Second Degree Burglary do not require that the prosecution prove that force was used to enter the building, or that threats were made during the incident. Rather, the element that includes language regarding weapons, injuries, and threats did not apply in this case, and the judge properly did not instruct the jury on that element.[18]  (T. 395).

Petitioner's claim of insufficient evidence cannot succeed because of his misunderstanding of the elements of Second Degree Burglary, and petitioner's claim that there was insufficient evidence on which to convict him should be dismissed.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the petition be DENIED and DISMISSED; it is further

RECOMMENDED, that no certificate of appealability issue.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of*

---

[18] Counsel did not object to the charge because the charge was correct.

*Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Date: May 19, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge